590491. Mr. Magg, Mr. Griffiths, wait a second. Okay. Mr. Magg, welcome. Thank you, Your Honor. Do you represent Mr. Goode? I represent Mr. Goode. My name is Thomas Magg. May it please the Court? Okay. Counsel, I'm here today to ask you to reverse the dismissal of this case by the trial court. This was dismissed on the pleading, motions to dismiss. We did not get into summary judgment or trial of the facts. There are two counts. I need to interrupt you. Did we announce the number on this case? I don't think you did. I don't think you did. I apologize. Let me do that. He's excited. I was welcoming you and you got going and so we're going to start your time over. This is the case of Eric Goode v. Jeffrey Yenchko in his capacity as Chief of the Firearm Service and Bureau of the State Police, 520491. Now you may go, Mr. Magg. Thank you. Counsel, this is Thomas Magg. May it please the Court? I'm sorry. If I could ask you to first address the argument raised by opposing counsel that your client is forfeit of these issues in the trial court. I want to make sure I have the procedural history correct. First of all, you did not file a reply brief. Is that accurate? That is accurate. So in the trial court, then this came on the second amended complaint. Correct. And then the defense filed their motion to dismiss. Correct. And then did your client file a written response to that motion? No. There was a previously filed summary judgment motion that addressed the same basic issues that I appropriated by that my oral argument to the trial court. So that was unclear to me as well. I saw in the record that a hearing date was set on this motion, but I did not see an actual transcript or anything on the docket that indicated who was present. So there was oral argument? There wasn't oral argument. It was not just ruled on the papers, as it were. Judge Foster is very good at giving oral argument whenever the parties want. Okay. So you did argue this motion? Absolutely. And I did not see the transcript. Was it in there? I don't believe it was transcribed. Okay. All right. I looked in the record and did not see a transcript of it either, even though we did order all the transcripts that were. No bystander report? There was no bystander report. Of course, this being a motion to dismiss, a 615 and or 619 motion, depending on the portion of the argument, there is no deference paid to the ruling of the lower court. It is de novo review. The first count is based on 42 U.S.C. section 1983 to enforce a federal statute, specifically 18 U.S.C. 15212C. Got a long citation, but the crux of that statute is part of the sausage baking of legislative activity. When Congress passed the so-called Brady Bill or Brady Act of 1994 to put background checks first on handguns and then on firearms generally, like its dealers, they imposed a requirement that, assuming the prospective purchaser passed the background check, that the system wasn't being used to create a registry of firearms. And I make reference to that in my brief citation, some legislative history to that effect. And so what was required is that, with the exception of the date and the NTN, or I believe it's short for National Transaction Number, would be destroyed on the government side and that the record of the transfer would be retained by the dealer in the ATM dealership records. It's a 4473, if any of you have ever filled it out with a licensed dealer. I don't know if you have or not. And that way, the dealer could be audited to make sure that they're doing the background checks, but the government doesn't have a list of who's buying what, when, so on and so forth. And under that statute, the records are supposed to be destroyed. The federal regulation, cited in the brief, 28 CFR 25.9, sets that time period of 24 hours. And there was admittedly some litigation over even whether that 24 hours was being permitted, but I'm not here to argue about 24 hours or even 24 days. The simple fact of the matter is, is contrary to the federal statute, Illinois is keeping the information so that the court understands how Illinois' system works. In Illinois, unlike most, every other state, I think New Jersey is the only other state, we have what's called a FOID card, Firearms ID card. The Illinois State Police has signed a memorandum of understanding with the Illinois State Police, as we've pleaded, to where the Illinois State Police will act as what's called a point of check for the FBI to do the background check. When the dealer does the firearms transfer, he either calls in or goes on the computer, contacts the state police to check the records, check with the FBI. A background check is performed. A transaction number is provided. It's either approved or disapproved. As we have FOID cards, I think it's probably fair to say most of them are approved, or the person probably wouldn't have a FOID card to start with. None of that is challenged. All of that incorporates federal procedure, because it's a memorandum of understanding that the state police is the point of check. Well, for the FBI, the state police is. I'm sure I said that right. Thus, the state police is required to destroy that record, assuming the person passes the background check. That doesn't happen. The information is retained for at least a year, and there is some indication that it is kept well beyond a year. And was your client one of the individuals who brought the gun in? As pleaded in the complaint, my client, a former Madison County Sheriff's deputy, bought his service weapon when it was surplused out from Madison County Sheriff's Department, which was transferred through a licensed federal dealer, where he went through this process, including going out to 4473, having the FOID card back, all of that. My client has standing. He is personally aggrieved before the filing of this complaint. What is his injury? His injury is that his privacy rights under this statute have been violated, in that, contrary to the statute, which was designed expressly to prevent and preclude the type of registry and privacy violations that the state police are committing to prevent that from happening. Again, we're not concerned about 24 hours. We're not concerned about a week. But when the records are retained, apparently indefinitely, but definitely more than a year, that's a violation of my client's privacy rights under the statute that is designed specifically to preclude that. The court found, in dismissing that, that my client didn't plead a constitutional violation. Well, under 42 U.S.C. Section 1983, I'm not required to plead, my client's not required to plead a constitutional violation. He's allowed to. That's one of the types of things 1983 actions allow. But there's an or, paraphrasing, federal laws. This is a federal law. Second, the court found that there was no private right of action under the statute. While there were some trial courts out there that have come to that conclusion, as near as I've been able to discern, there is no appellate-level authority on this. At the appellate level, this is a case of First Depression. But it is our argument that 42 U.S.C. 1983 is the mechanism by which to enforce this statute. Just as the Fourth Amendment has no inherent enforcement mechanism for excessive force claims, they're enforceable through Section 1983. The same is true for this statute. Otherwise, this statute has no enforcement mechanism. There's apparently no criminal penalties for violating it. There's no mechanism set forth in this statute for some governmental agency to enforce it. So it's either enforce it through 1983, or it's a dead letter on its face. And, of course, the court should not presume that the Congress did not act with the intent to accomplish nothing. The second count is brought for matters that arose during the course of litigation. Of course, an attorney and their client have an obligation to communicate with each other. The employee's spouse is an employee of the Illinois State Police, not necessarily the exact department that Mr. Ginchinco works for, but an employee of the State Police nonetheless. The evidence showed that the Illinois State Police, apparently upon figuring this out, started interrogating the plaintiff's spouse, demanding to know about communications between myself and the plaintiff, myself and my client. Well, counsel, the answer is your client's wife is not a named party. She is not. I mean, I'm troubled by this allegation. As am I. Deeply troubled. But what's the standing if she is not a party? It is my client's right to confidentiality, not her right to confidentiality. As is pleaded in the complaint, my client and I went to a secluded room with no one else present. If a governmental entity had tried to tap that or listen in, obviously that would be a problem. The fact that the mechanism that they chose was putting pressure on my client's plaintiff's spouse to say, tell us what you overheard, not about a conversation at the kitchen table where you might have been present or in the lawyer's office where you might have been present, which clearly would have waived the attorney-client privilege, but in a closed room where only the attorney, myself, and my client were present, where there was an objective intent for privacy. An expectation of privacy. An expectation of privacy, yes. And therefore, the fact that the state is attempting to invade that privacy, whether it's through a listening device, leaning on an employee who happens to be married to the plaintiff, whether it's some sort of eavesdropper outsourcing their ear to the window, the end result is the same. They're attempting to invade the private communications of a citizen of this country, litigating against the state and their attorney, which is very troubling. The stated reason why that was dismissed was there was no expectation of privacy because communication took place in the presence of the spouse. That is directly contrary to the pleadings, and it is factually untrue. And for those reasons- You're saying the court made a mistake? Yes. Obviously, many people come before Your Honors and say the lower courts made a mistake. That's why we have a bell of courts. No, but as far as the factual findings- Yes. As to what happened, the court made a mistake. Yes. Under 2-619, which is the motion that was filed, affirmative matters can be raised to defeat the plaintiffs, but they cannot contradict the allegations. No, they're taken as true. They're taken as true. We expressly pleaded, the plaintiff expressly pleaded. I believe it was in paragraph 5. I have to pull the complaint, but it's attached to my brief. Well, here's paragraph 8. The communications between plaintiff and his counsel were and are subjectively intended to be confidential and included steps of and including going to an otherwise empty room and having discussions out of the range of normal earshot. That is- That doesn't say the wife was present. That does not say the wife was present, and we say the wife was not present. But it is the argument of the state who, of course, unless they're watching, would have no way of knowing whether the wife was present or not. But as part of their argument, claimed she was present and convinced the court, as a matter of fact, on a motion to dismiss. Unless there's any other questions, I'll- What is the affirmative matter that was used? I believe that the affirmative matter was that the wife was present, but that would directly contradict the allegation of the complaint, which means it can't be an affirmative matter under the rules. I'm just not sure that the court delineated what the affirmative matter was in its order. I agree. I'm attempting to show that myself, but that's all I could come up with, was that the court believed that the spouse was present, which is contrary to the pleadings and factually untrue. Thank you. Hold on just a minute. I believe that opposing counsel argues that the attorney-client privilege really is an evidentiary privilege and doesn't rise to the level of constitutional protection. How do you respond to that? The difference is the distinction between the right of privacy and confidentiality and privilege. Privilege is an evidentiary matter. The right to privacy is a constitutional matter. The Fourth Amendment protects the right to privacy, which as incorporated under the Fourteenth Amendment is a constitutional matter. It isn't your client's contention that the interrogation was to divulge attorney-client privilege communications between yourself and the plaintiff? The communications are both privileged and confidential. It was the intent of the state to try to purvey those. So while the communications were not and should not have been admissible, if actually obtained as an evidentiary matter, as a matter of constitutional law, the state had no right to seek them in the first place. It would be like putting a listening device in my client's office without a warrant, which is, of course, a constitutional problem. Thank you. Okay, Mr. Beck. Thank you. We will have a few moments after opposing counsel. Mr. Griffiths? Is that right? Yes. Mr. Griffiths for the state? Good afternoon, Your Honor. Correct. May it please the Court, Assistant Attorney General Carson Griffiths, on behalf of Jeffrey Yenchko, Chief of the Firearm Services Bureau of the Illinois State Police. This Court should affirm the Circuit Court's judgment because Good forfeited any arguments that the Circuit Court erred in granting the Bureau Chief's motion to dismiss by failing to respond to it. The Circuit Court and forfeiture aside, his claims failed as a matter of law. Can we talk about the forfeiture issue? And you heard the questions that I asked Mr. Magg. Correct. About this hearing, which I could find no transcript or bystander's report in the record. Was a hearing held on this motion? It's not clear to me that a hearing was held because the transcript isn't in the record. It's documentary reflecting that the court and there's an order in which the court scheduled a hearing for April 30th, 2025. So you were not counsel. I was not counsel in the trial court. However, it's counsel's burden, opposing counsel's burden, to supply this court with a complete record under Fauci v. O'Brien, as this court is well aware. Any doubts about the incompleteness of the record should be construed against him. So his assertions today that there was an oral argument in which he made these arguments, they're just not in the record, and this court can't assess the accuracy of that statement without either a bystander's report or a transcript, which we don't have. Briefly, in response to Your Honor's question about did he file a written response, opposing counsel noted that he had filed a motion for summary judgment. Two quick points on that. That motion was denied at the time the circuit court granted our motion to dismiss the first amended complaint. The court said, I'm granting the motion to dismiss the first amended complaint. You have leave to replete, and your motion for summary judgment is denied as moved. The second point on the motion for summary judgment is there actually weren't any substantive legal arguments in that motion. The basis for the motion for summary judgment was that we didn't file a responsive pleading in time, and counsel asked the court to deem all of his allegations admitted and just grant him judgment as a matter of law. The circuit court obviously declined to do that, so I don't know what could have been incorporated from this motion for summary judgment, which was just a bare bones document with no legal argument, at the hearing that would have actually been an argument in response to any of the points we raised in our motion to dismiss the second amended complaint. Mr. Griffiths, I thought we're here on the order of May 14th, 2025. We are, Your Honor. Okay. Yes, I'm just pointing out that there was this motion counsel referenced, this motion for summary judgment. That's a dead letter. That has been long moved, and it's not... That's not the subject of this hearing. Correct. Mr. Magg, when I asked the question, he said that when he orally argued this, he incorporated by reference the motion for summary judgment filed previously. And you're saying that that motion for summary judgment didn't address any of the issues in your motion? No. It said defendant hasn't filed a responsibility in time. The court should deem all the allegations of my complaint admitted, and then it recited the allegations of the complaint again. It didn't actually respond to the motion to dismiss that was on file at the time, let alone the motion to dismiss that is before Your Honors today, which was a whole new complaint, directed at a whole new complaint. So that's all just to respond to that point today. I think it's something Your Honors don't need to consider is this motion for summary judgment that was referenced. And as for the notion that de novo review can somehow relax forfeiture, that's just simply not the law. As we cite in our brief, the Evanson insurance case and this Court's decision in Zerhal or Zerjal, both were motions to dismiss, which are always reviewed de novo. And in both circumstances, the Court said you didn't respond to a point in your written response to the motion to dismiss. Therefore, the point is forfeited. But as to that, I'm trying to remember the factors. If it's a de novo review, if you're not prejudiced, if you're able to make the arguments, and I think there's another factor in there somewhere that we have to consider of whether or not to get over the forfeiture. You obviously, by your briefs, are able to argue the issues. Is there any prejudice for us to overlook forfeiture and decide the case on the merits? I think that there's prejudice both to my client in that he should not have to defend the decision on the merits when there was no meaningful response to them in the Circuit Court. And I think it's unfair to the Circuit Court judge, Your Honor. I mean, this was a motion to dismiss that was pending for over two months. There's no response to it. There's no extension of time to file a response to it filed. And even after the Circuit Court notes in its order, there was no response filed in granting the motion. There's no motion to reconsider or request to file a response in stanter. And now, opposing counsel is saying that the Circuit Court erred in granting that motion. It's just really — I don't understand procedurally why that can't happen. Why what can't happen, Your Honor? I'm sorry. So you filed the motion to dismiss, right? Correct. He didn't respond. Correct. You could have defaulted him, right? Well, we weren't at the plaintiff. We wouldn't move for a default judgment. Oh, that's right. Okay. So you were defending, but you could have braced just the issue that he hadn't responded. And so the court dismissed the complaint on your motion, right? Correct. So why can't he appeal? He can appeal. This court has jurisdiction. But it shouldn't consider these arguments that the Circuit Court erred in granting a motion that wasn't opposed. At least, as far as we can tell, it wasn't opposed in the record. So what if there's a limitation on the parties, not on the court? It is. And I would just ask Your Honors to consider the fact that this is a pretty egregious case of forfeiture. But should this court overlook the forfeiture, I'd like to move to the merits. And first, the claim based on the Brady Act's record destruction provisions. Initially, Mr. Goode's attempt to enforce those provisions through Section 1983 failed because the Brady Act lacks any unambiguously rights-creating terms. Federal statutes are not enforceable under Section 1983 as a matter of course. They only create an enforceable right, privilege, or immunity if they clearly and unambiguously use rights-creating language that displays an unmistakable focus on individuals like a plaintiff. By contrast, statutes that use language focusing on the person or entity regulated rather than individuals protected do not create enforceable rights. And here, the statute that Mr. Goode relied on includes no language focusing on individuals that participate in firearm transactions or conferring any rights on them. It proposes requirements to destroy records on, quote, the system, meaning the National Instinct Criminal Background Check System. Thus, the language of the statute focuses solely on the entity regulated, meaning the NICS system, rather than individuals. It's similar to the Gonzaga University case where the federal statute there referred to the agency doing the regulating, in that case the Education Department, rather than any individuals, and the court said that's not enforceable under Section 1983. This is also true for the federal regulation that counsel referred to that imposes a record destruction requirement on state and local law enforcement entities that act as points of contact. Those regulations impose requirements on, quote, state and local law enforcement units, not any individuals who participate in the firearm transactions. And I noticed counsel today used the phrase privacy rights in stating what he was seeking to enforce. That phrase does not appear in the Brady Act, and it does not appear in the federal regulations implementing it. If there were similar rights creating language or an express creative privacy right, it would be a different story, but that's not what we have here. And even if the statute had rights creating language, that simply creates a rebuttable presumption that it's enforceable. And that presumption can be rebutted when it's here, Congress has provided an express remedy for violations of the statute, but it is more narrow than 1983. So specifically, Section 925A says that a party who's denied a firearm based on erroneous information can seek an order either correcting the information or approving the firearm transaction and get attorney's fees and costs. That's a more limited remedy than Section 1983. It restricts the potential plaintiffs to those who were denied a firearm, which is not Mr. Good's scenario. He was allowed to purchase a service weapon, and it doesn't allow for damages like Section 1983. So by creating this more limited remedy in the Brady Act, Congress has instanced intent to only allow for that more limited remedy and not the more expansive remedy of Section 1983. Setting all that aside, Mr. Good also did not plead sufficient facts to allege a violation of the Brady Act's record destruction provisions. There's an exception in the federal regulation for record systems that are created and maintained pursuant to an independent state law regarding firearm transactions. And as we point out in our brief and explain, Section 3.1 of the Floyd Act requires the Illinois State Police to maintain a firearm transfer inquiry program irrespective of the Brady Act's requirements. In fact, it was enacted prior to the Brady Act, so it's an independent requirement. So for all those reasons, this Court should uphold the dismissal of Count 1 of the Second Amendment Complaints. It also should uphold the dismissal of Count 2, which was Mr. Good's. Before we go on to the second count, so under the section you just talked about, about allowing the state to keep these records, can they keep them indefinitely? What are these records? What are they keeping track of? Again, I'm going to use this again. I'm extremely concerned and troubled if the ISP is keeping long-standing records of what firearms I or anybody else may buy, law-abiding, especially in light of the recent history of the Illinois executive and legislative branches continued and persistent assault, and I use that pun intendedly, upon our Second Amendment rights. So what are they keeping? How long are they keeping it? And why are they keeping it? According to the allegations of the complaint, which we have to assume is true, they are keeping Floyd card numbers, names, dates of birth, and in certain circumstances, the type of firearm transfer. That's all data that the regulations implementing the firearm transfer inquiry program requires because when a licensed dealer calls the Illinois State Police or submits the transaction for approval, it submits an individual's Floyd card number. That Floyd card number on the card itself and in the records corresponds to their name and date of birth. I know how that works. Right. And then only in the circumstance where there's a conditional denial, which is usually a situation in which there's something Illinois State Police needs to investigate. So, for instance, maybe there's an out-of-state potential prohibitor, like an old conviction or something like that, that they need to contact that other state and know where the firearm rights were stored, what happened with the conviction. We don't have access to that in our own system. They will issue a conditional denial and then ask for the type of firearm transfer just to determine the waiting period under federal law to transfer the firearm. So it's not every firearm transaction. There's no database of guns in dealings. My next question is how long is the information kept? I don't know how long the information is kept. According to the complaint, which is, again, all we're reviewing here, it's more than 24 hours. And he said I think in some circumstances up to 12 months. I don't know the understated valuation. Under some circumstances, 12 months. But that would be a violation of the law. No, it would not, Your Honor. Why not? Because the Brady Act imposes a record destruction requirement on state law and local law enforcement units unless there is a record system maintained pursuant to an independent state law. And we have an independent state law. Correct. Section 3.1 of the Floyd Act. If the Brady Act was repealed tomorrow, Section 3.1 of the Floyd Act would remain. And there would still be a firearm transfer inquiry program through which Illinois State Police maintains records. So there's really just no record destruction requirement applicable to Illinois State Police. And certainly for all the reasons I discussed, not one enforceable through Section 1983. So why didn't the court dismiss it on that basis? It did, Your Honor. It said that there was no right of action under Section 1983 in its order. No. What you just described is a separate law that allowed for a policy of nondestruction. That's what you answered. And then you just gave me that it dismissed on no private right of action. That's two very different things. I see the no private right of action, and I know that other courts have dismissed based on that. Right. But the question that was asked of you is about the complaint and how long it's kept. And then I asked you whether or not that was unlawful. Right. We have two different things going on here. It's an alternative argument that if this court does find that the Brady Act and its regulation is enforceable through Section 1983, we should still win. And we can raise that here because. But the court order we're talking about says there's no private right of action. Right. You don't need to go beyond that. I agree. So you don't need to reach the merits of count one. If the court does, it's well established. We raise that argument below in our motion to dismiss, and you can affirm on any basis that was presented in the circuit court. And so you could, but I 100% agree that you don't have to. You can just resolve it on a private right of action. Okay. So turning briefly to the Fourth Amendment claim, and I want to clarify briefly the procedural posture. Counsel said that we filed a 2619 motion that's not accurate. It was a combined 2615 and 2619 motion under 2-619.1. So we both alleged 2619 as to his lack of standing to bring a Fourth Amendment claim and said he didn't plead it properly under 2615. So both. But the court doesn't make reference to that, interestingly enough. It did not dismiss on the 2615 grounds outside of the waiver point. However, it did find that he lacked standing. That's true. It sort of. But it talks about 619A9. Well, you're right. The affirmative matter would be the lack of standing, which is a proper basis for a 2619. So I see my time has expired. Go ahead and finish. Thank you. Just briefly, Fourth Amendment rights, they're personal and it's well-established. They can't be asserted vicariously. That's what Goode tried to do here by enforcing his wife's right to be free from illegal searches and seizures. It's well-established he can't do that. And also, that aside, there were not sufficient allegations to demonstrate that either Mr. Goode or his wife were questioned in circumstances in which a reasonable person wouldn't feel free to leave, which is what's required to establish, to state a Fourth Amendment claim. So for either of those reasons. Mr. Griffiths, I'm going to ask you one more question. Sure. The court ruled that the plaintiff lacked standing, but it seemed that the way it ruled lack of standing was based on a marital privilege. Is that wrong? Am I reading the order wrong? I don't recall that there – It doesn't say that. It says a hybrid privilege theory based on spousal status and derivative attorney-client protection. I think that that's the court describing the legal theory of plaintiff and saying that's not a basis for a Fourth Amendment claim and it doesn't confer standing on it. No, it doesn't. It's saying it doesn't confer standing. Right, right. So I think all the court is saying there is he doesn't have standing to bring a claim on behalf of his wife. That is exactly what we argued in our motion to dismiss. And this hybrid theory about privilege, it doesn't confer standing on it. And that's correct. The Fourth Amendment doesn't – It just seems that the parties are mixing things around here that make it very confusing. I think our motion to dismiss was quite straightforward, Your Honor. And I think part of the problem is, to move back to the first theme, there's no response to it in the record. And so there's no clarification of the issues. We don't have a transcript of this argument where maybe this hybrid theory was more fleshed out. And, again, that's not something that should be construed against my client. It's something that should be construed against Mr. Goode. So for those reasons and all the reasons in our brief, no. Thank you. Thank you. We have some confirmation. Thank you very much. Mr. Mayne, you have a few more minutes. How did it get around the standing issue? It is my client's right to confidentiality to communicate in private in a room by himself. Why should he allow the wife in? The wife was not there? The wife was not there. And so how did the wife know what was going on? She probably knew that we were having a communication. But much beyond that, I don't know that she knew anything at all. Maybe she did. Maybe she didn't. But it was certainly as pleaded in the complaint. The intent was to go off and have a private conversation in a room without the wife being present. I think the allegation is that basically the ISP was trying to essentially browbeat her into what was said and what was going on. Exactly. In the colloquial, yes. She didn't say they said this, they said that. They were trying to get the information. They were trying to get the information from her. I'm trying to understand that how does that give rise to a count that you've claimed under count two, this Fourth Amendment claim? My client has a right to confidentiality in his communication. Does the Fourth Amendment say that? Not to use the word privacy, but right to secure the papers, persons and possessions, or words to that effect, which I think includes communication. Otherwise, the state police could put a listening device in your kitchen without a warrant. And that's essentially what they've attempted to do here. As Justice Boyd just indicated, they more browbeat her than anything else and it wasn't very successful. Well, I don't know. Apparently, she's about to no longer be employed by the state police. Well, that's something else. We're trying to answer a question. Counsel, I don't see anywhere in count two where it's alleged that your client was under any type of surveillance. That it seems that all the conduct that is alleged in count two is directed towards his wife. The allegation is that the wife was advised as to certain meeting times and dates between myself and my client, which is an implication that there was some sort of surveillance going on. Are we bringing suit alleging a violation because they might have had some private investigator following him or me, or a state police officer following him or me? No, that's not the basis of our claim. That's my point. The allegation is that the statements that were made to your client's wife implied that they did something. But there's nothing specifically pled factually that they did in fact do anything directed toward your client in count two. Is that correct? We don't know because we were not allowed to get into discovery. Okay, now what is alleged? What is alleged basically is, just as Bui said, browbeating to say, tell us what your husband and his attorney were talking about or else. So, but Mr. Rank, you have enough experience that you understand we're a fact-finding state. We are. And you've not pled sufficient facts here that I can see that really explain how the Fourth Amendment is implicated and how you have standing to even bring this claim. I hear the implications that you told Justice Bollinger, but where's the facts? Well, the implication is actually included in here almost exactly as I… I know, but is that your representation? Is that the facts that you just told Justice Bollinger to support your claim? I believe it does, yes. Okay. And we're only required to plead facts related directly to the cause. We're not required to plead legal conclusions. As a matter of fact, legal conclusions are generally disregarded for the plea. Okay. I would like to answer one of the questions that was asked of counsel, and that is how long these records are kept. As noted in paragraph 8 of the complaint, of count 1, for at least 12 months and apparently longer. That's the allegation. That is the allegation. A fact. A fact, yes. And unless Your Honors have any further questions. No further questions. No? No. Thank you very much. I ask that Your Honors reverse the process and remand to further proceedings. All right. Thank you both for your arguments here today. The matter will be taken under advisement. We will issue an order in due course.